JNK:hkp



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.    00-6117-Cr-MORENO/Dube

CLARENCE MADDOX
CLERK, USDC/SDFL/MIA

UNITED STATES OF AMERICA,

        **Plaintiff,**

vs.

MARK ROSEMAN,
MIRIAM "MIMI" LAWRENCE, and
LEO BROVILLETE,

        **Defendants.**

_____

## GOVERNMENT'S FIRST SUPPLEMENTAL RESPONSE TO
## THE STANDING DISCOVERY ORDER

The United States hereby files this First Supplemental Response to the Standing

Discovery Order and states as follows:

A.    1.    The government has provided copies of ten audio tape conversations,

including conversations between defendant Lawrence, defendant

Brovillette and others.

C&D.    Attached are documents provided under the scope of Brady/Giglio concerning

James Lowe and Stanley Lerner.  With respect to Stanley Lerner, attached are a

court opinion from the Supreme Court of New York, Appellate Division, an

opinion of the Florida Board of Examiners, a plea agreement in Case No. 99-

6266-Cr-Middlebrooks, a proffer letter, and a plea agreement in Case No. 00-

6127-Cr-Dimitrouleas.  With respect to James Lowe, in or about 1993 James

Lowe was involved in drug trafficking.  On or about July 25, 1993, he assisted in

offloading cocaine being imported into the United States, and received $2,000.

He failed to report any drug income on his 1993 federal income tax return. Also,

in purchasing a home James Lowe submitted federal income tax returns for 1992,

1993, and 1994 representing his income as $81,000, $88,000, and $101,000, when

he had submitted tax returns to the Internal Revenue Service representing that his

income was $3,100, $0, and $21,000, respectively.   With respect to both James

Lowe and Stanley Lerner, once they were approached by law enforcement and

began to discuss cooperating with law enforcement, they both are believed to have

engaged in additional fraudulent activity.  Also attached are plea agreements for

Lynda Roseman and Elizabeh Velasquez who pled guilty on June 12, 2000, and a

copy of a search warrant issued with respect to the office of Jack Kudron.

                              Respectfully submitted,

                              GUY A. LEWIS
                              UNITED STATES ATTORNEY


                    By:   _____
                              Jeffrey N. Kaplan
                              Assistant United States Attorney
                              Court Bar No. A5500030
                              500 E. Broward Boulevard, Suite 700
                              Fort Lauderdale, Florida 33394
                              Telephone:  (954) 356-7255x3515
                              Facsimilie: (954) 356-7228
                              E-Mail Address:
                              (Jeffrey.Kaplan@justice.usdoj.gov)

CC:    FBI, S/A Orihuela
       IRS, S/A Kunsman

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was delivered by

United States mail this 15th day of June, 2000, to:

H. Dohn Williams, Esquire
721 NE 3rd Avenue
Fort Lauderdale, Florida 33304

Jeffrey Feiler, Esquire
7685 SW 104th Street, #200
Miami, Florida 33156

Robert Berube, Assistant Federal Public Defender
101 Northeast Third Avenue, Suite 202
Fort Lauderdale, Florida 33301

Jeffrey N. Kaplan
Assistant United States Attorney

1ST CASE of Level 1 printed in FULL format.

In the Matter of Stanley Lerner, an Attorney

[NO NUMBER IN ORIGINAL]

Supreme Court of New York, Appellate Division, Second Department

36 A.D.2d 718; 320 N.Y.S.2d 1012; 1971 N.Y. App. Div. LEXIS 4591

March 1, 1971

CORE TERMS: resignation, professional conduct, present time, settlements, counselor, infants', retainer

JUDGES: [**1]

Rabin, P. J., Hopkins, Munder, Martuscello and Latham, JJ., concur.

OPINION: [*718] Stanley Lerner, an attorney and counselor at law who was admitted to practice as such by this court on December 17, 1958, has submitted to this court his letter dated January 12, 1971 in which he states that he thereby resigns as a member of the Bar of the State of New York, effective February 1, 1971. The facts underlying the resignation are as follows: In March, 1969 the Brooklyn Bar Association advised this court that it had completed its investigation of a complaint against this attorney and that the investigation disclosed facts which warranted a large scale inquiry into his professional conduct. Thereupon, at the request of this court, the Judicial Inquiry on Professional Conduct in the Second Judicial District proceeded to investigate Mr. Lerner's law practice and such investigation has continued to the present time. In view of Mr. Lerner's tender of his resignation at this time, the Judicial Inquiry has submitted a report to this court. The report states that Mr. Lerner has conducted "a massive contingent-fee negligence practice of approximately 3,000 cases" in the past 10 years and [**2] that "several hundred such cases are [*719] still pending." It appears from the report that Mr. Lerner testified before a Justice of the Supreme Court in this inquiry on October 7, 1969 and thus learned "that the Inquiry was in possession of evidence of [his] misconduct in several serious respects." Such evidence, obtained in the investigation up to the present time, would indicate that he has: 1) Defrauded clients of proper shares of settlements; 2) Failed to maintain a special escrow account and has commingled clients funds with his own; 3) Given false testimony before the Grievance Committee of the Brooklyn Bar Association; 4) Failed to obtain court approval of infants' settlements; 5) Filed hundreds of retainer and closing statements with the Judicial Conference of the State of New York, which he knew contained false information; 6) Failed to file retainer and closing statements with the Judicial Conference; 7) Grossly neglected the prosecution of many cases; 8) Concealed the infancy of clients and failed to have guardians appear for the infants in court actions; 9) Represented conflicting interests; and 10) Engaged in the systematic solicitation of negligence cases.  In [**3] view of the evidence adduced by the Judicial Inquiry with respect to the professional activities of Mr. Lerner, his resignation as a member of the Bar is accepted and directed to be filed; and it is ordered that his name be struck forthwith from the roll of attorneys and counselors at law entitled to practice law in this State.

250 So.2d 852.
(Cite as: 250 So.2d 852)

**FLORIDA BOARD OF BAR EXAMINERS,**
**Petitioner,**
**v.**
**Stanley LERNER, Respondent.**

**No. 41267.**

Supreme Court of Florida.

July 21, 1971.

License revocation proceedings. The Supreme Court held that falsification of bar examination application warranted license revocation.

License revoked.

**ATTORNEY AND CLIENT** ⚖️**40**
45k40
Falsification of bar examination application warranted license revocation.
**\*852** John Germany, Tampa, for petitioner.

Stanley Lerner, in pro. per.

**\*853** PER CURIAM:

Pursuant to Rule III, Section 22, of the Rules Relating to Admission to The Florida Bar, the Florida Board of Bar Examiners has made an investigation and submitted its findings and recommendations to this Court for final action.

The findings of the Florida Board of Bar Examiners include the following:
'1. That under Item 101(d) in his application filed with the Board, the accuracy of which was sworn to by respondent on February 24, 1970, he falsely gave the negative answer 'no' to the following question:
'Have any charges or complaints, formal or informal, ever been made or filed or proceedings instituted against you?'

well knowing said answer to be false in that a charge or complaint was made against him by one Wanda Horton which was sworn to on July 30, 1968, and submitted to the Judicial Inquiry on Professional Conduct of attorneys in the Second Judicial Department, Supreme Court, Kings County, New York, and which resulted in respondent's ultimate disbarment from the practice of law effective March 1, 1971, by the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department.
'2.    That under Item 101(e) in respondent's application filed with the Board, the accuracy of which was sworn to by him on February 24, 1970, he falsely gave the negative answer 'no' to the following question:
'Have you ever appeared, formally or informally, before a grievance or other similar committee of any bar association or other law group?'
well knowing said answer to be false in that he appeared, formally or informally, before the Brooklyn, New York Bar Association, Committee on Grievances on or about March 19, 1969, to respond to a complaint made by one Wanda Horton.'

It is the conclusion of this Court that the evidence before the Florida Board of Bar Examiners, as set forth in the foregoing findings, establishes that the respondent did gain admission to The Florida Bar Examination upon an application which was falsified, and accordingly the recommendation of the Board that the license heretofore issued to Stanley Lerner be revoked by this Court pursuant to Rule III, Section 22, of the Rule Relating to Admission to The Florida Bar, should be and the same is hereby approved and adopted as the decision of this Court.

It is so ordered.

ROBERTS, C.J., and ERVIN, CARLTON, ADKINS and DEKLE, JJ., concur.

END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

**U.S. Department of Justice**

D
J

*United States Attorney*
*Southern District of Florida*

---

*Central Criminal Division*
*299 East Broward Boulevard*
*Fort Lauderdale, Florida 33301*
*(305) 356-7255*

January 8, 1999

Howard L. Greitzer , Esquire
600 N.E. Third Avenue
Fort Lauderdale, Florida 33302-1778

Re: Stanley Lerner

Dear Mr.Greitzer:

It is my understanding that your client, STANLEY LERNER is interested in providing the United States Attorney's Office with information concerning possible violations of federal law. Such cooperation should initially involve meeting with your client so that your client can make a proffer to be evaluated by the United States Attorney's Office before finalizing any agreement. In order to assure that there are no misunderstandings concerning the procedures to be followed in making such a proffer, I am writing to clarify the ground rules.

1.      No oral statements given by your client during the proffer will be used against your client in any proceeding or prosecution.

2.      The Government may make derivative use of and may pursue any investigative leads suggested by statements or other information provided by your client during the proffer and may use any evidence so developed against your client and other persons.

3.      If your client testifies at any proceeding (including, but not limited to, a trial), and if he offers testimony different from the statements made in the proffer, the Government may cross-examine him about the statements made in the proffer and may introduce in evidence the contents of those statements made in rebuttal.

4.      If your client is ultimately adjudicated guilty of a criminal offense, the Government may advise the Court of any statements made during the proffer at any sentencing proceeding involving your client, including, but not limited to, a proceeding regarding a proposed reduction in sentence.



GOVERNMENT
EXHIBIT
1

5.      Should it be determined by the United States Attorney's Office for the Southern District of Florida that any information or testimony provided by your client is materially and willfully false, he may be subject to prosecution for any and all appropriate federal criminal violations which he may have committed, including, but not limited to, perjury, making a false statement, and obstruction of justice.

6.      Should your client willfully give materially false statements, information or testimony, any statements, information or testimony which your client may provide will be used against him in a subsequent prosecution.

7.      With the exception of the undersigned Assistant United States Attorney, no other officer or agent has any authority, express or implied, to offer any concessions or to make any promises which are binding upon the United States of America.

8.      Finally, you should understand that nothing your client says during the proffer obligates the Government to offer any specific plea agreement to your client nor to move on substantial assistance grounds for a reduction in any sentence that may be imposed in the above captioned matter or to file any such motion in any state matters or to contact the appropriate state authorities. By this letter, the Government reserves its sole discretion the right to decide the plea agreement, if any, to be offered to your client. In addition, the Government reserves its right to decide whether or not a substantial assistance motion is appropriate if applicable in this situation to State Of Florida authorities, the criteria for determining whether to make such a motion, and when, if ever, such a motion should be made. No additional promises, agreements and conditions have been entered into other than those expressly set forth in this letter.

I trust that you will find these ground rules and this anticipated procedure fair and reasonable. If your client wishes to provide a proffer pursuant to the guidelines outlined above, you and your client should both sign this letter in the space indicated below. As you can see this proffer is an opportunity to determine if your client is being truthful and the information is of value to warrant further action by the Government on your clients behalf.

Once the letter has been signed, please return the original to me prior to your clients proffer, retaining copies for yourself and your client.

Sincerely,

THOMAS E. SCOTT
UNITED STATES ATTORNEY

By _____
        JEFFREY H. KAY
ASSISTANT UNITED STATES ATTORNEY

## Acknowledgment

I, HOWARD GREITZER, am the attorney for STANLEY LERNER . I have explained to him the terms and conditions set forth above and I am satisfied that he understands and agrees to them.

Date: 1/20/99

HOWARD GREITZER, Esq.
Attorney for STANLEY LERNER

I, STANLEY LERNER, understand the foregoing rules, and I agree that I will make a proffer under the terms and conditions set forth above.

Date: _____

STANLEY LERNER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,                    CASE NO.


-vs-                                         PLEA AGREEMENT


STANLEY LERNER

                    Defendant.
_____/

        The United States of America and STANLEY LERNER(hereinafter referred to as the

"defendant") enter into the following agreement:

        1.      The defendant agrees to waive Indictment by Grand Jury and to proceed by the U.S.

Attorney filing a Criminal Information.

        2.      The defendant agrees to plead guilty to one count of Conspiracy to Commit Mail

Fraud and Wire Fraud in violation of Title 18, United States Code, Section 371. The parties further

agree this plea will cover the defendants involvement in mortgage fraud during the years 1997 and

1998, while the defendant was employed at First Financial of Boston. The defendant further agrees

and understands he will be subject to another federal charge for mortgage fraud to be filed in the

Southern District of Florida by the United States Attorney's Office for the years 1995 and 1996. The

Government agrees to recommend to the court at the time of sentencing that the sentence in both

cases be served concurrently. The parties further agree that the minimum sentence the defendant shall

receive on both cases shall be no lower than 24 months incarceration. The Government however

retains the right should  it wish at the time of sentencing to recommend to the Court that the



combined sentence be lower than the agreed to 24 months.

3. The defendant is aware that the sentence will be imposed in conformity with the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"), and that the applicable guidelines will be determined by the court relying in part on the results of a Pre-Sentence Investigation by the court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the court may depart from the applicable guideline range and impose a sentence that is either more severe or less severe than the guideline range. Knowing these facts, the defendant understands and acknowledges that the court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 2, and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4. The defendant also understands and acknowledges that the court may impose a statutory maximum term of imprisonment of up to 5 years on the Conspiracy to Commit Mail Fraud and Wire Fraud count, followed by a term of supervised release. In addition to a term of imprisonment and supervised release, the court may impose a fine of up to $250,000 and may order restitution.

5. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 4 of this agreement, a Special Assessment in the amount of $100.00 will be imposed on the defendant.

6. The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office") reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses

2

committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7. The United States and the defendant agree that, although not binding on the probation office or the court, they will jointly recommend that the court make the following findings and conclusions as to the sentence to be imposed:

A. The parties agree the potential loss for years 1997 and 1998 under the Sentencing Guidelines Section 2F1.1 (b)(1)(O) is more than $5,000,000.

B. The Government further agrees the defendants offense did not substantially jeopardize the safety and soundness of a financial institution and the defendant did not drive more than $1,000,000 in gross receipts from the offense.

8. The United States agrees that it will recommend at sentencing that the court reduce by two-three levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1 of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. However, the United States will not be required to make this sentencing recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making a false

3

statement or misrepresentation to any governmental entity or official.

9.    The defendant is aware that the sentence has not yet been determined by the court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the court. The defendant further understands that any recommendation that the government makes to the court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the court and the court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 5 above, that the defendant may not withdraw his plea based upon the court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation jointly made by both the defendant and the government.

10.    The defendant agrees that defendant shall cooperate fully with this Office by:

(a)    providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other court proceeding;

(b)    appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings, and at meetings, as may be required by this Office.

11.    This Office reserves the right to evaluate the nature and extent of the defendant's cooperation and to make the defendant's cooperation, or lack thereof, known to the Court at the time of sentencing. If in the sole and unreviewable judgment of this Office the defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to

warrant the Court's downward departure from the sentence required by the Sentencing Guidelines, this Office may at or before sentencing make a motion pursuant to Section 5K1.1 of the Sentencing Guidelines, 18 U.S.C. §3553(e), or a Rule 35 motion subsequent to sentencing, reflecting that the defendant has provided substantial assistance and recommending sentence reduction. The defendant acknowledges and agrees, however, that nothing in this Agreement may be construed to require this Office to file such a motion and that this Office's assessment of the nature, value, truthfulness, completeness and accuracy of the defendant's cooperation shall be binding on the defendant.

12    The defendant understands and acknowledges that the court is under no obligation to grant a government motion pursuant to Title 18, United States Code, Section 3553(e), 5K1.1 of the Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, as referred to in paragraph    of this agreement, should the government exercise its discretion to file such a motion.

13.    The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Title 18, United States Code, Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range the court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in 18 U.S.C. § 3742(b). However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights. The

5

defendant understands that, although the defendant will be sentenced in conformity with the

Sentencing Guidelines, by this agreement the defendant waives the right to appeal the sentence on

the basis that the sentence is the result of an incorrect application of the Sentencing Guidelines.

    14.. This is the entire agreement and understanding between the United States and the

defendant. There are no other agreements, promises, representations, or understandings.

THOMAS E. SCOTT
UNITED STATES ATTORNEY

DATE: _2/5/99_

By:_____
    JEFFREY H. KAY
ASSISTANT UNITED STATES ATTORNEY

DATE: _2/9/99_

By:_____
    ATTORNEY FOR DEFENDANT

DATE: _2/9/99_

By_____
    STANLEY LERNER
    DEFENDANT

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA  )    CASE NO.
                          )
                          )
              Plaintiff,  )
                          )
        v.                )    PLEA AGREEMENT
                          )
LYNDA ROSEMAN,            )
                          )
              Defendant.  )
_____)

The United States of America and Lynda Roseman (hereinafter referred to as the "defendant") enter into the following agreement:

1.   The defendant agrees to plead guilty to the two-count information, which charges in both counts. I and II that the defendant made false statements for the purpose of influencing the actions of a federally insured bank, in order to assist another person in obtaining a loan, in violation of Title 18, United States Code, Section 1014.

2.   The defendant is aware that the sentence will be imposed in conformity with the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"), and that the applicable guidelines will be determined by the court relying in part on the results of a Pre-Sentence Investigation by the court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the court may depart from the applicable guideline range and impose a sentence that is either more severe or less severe than the guideline range. Knowing

these facts, the defendant understands and acknowledges that the court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3.    The defendant also understands and acknowledges that the court may impose a statutory maximum term of imprisonment of up to thirty years with respect to both counts I and II, followed by a term of supervised release. In addition to a term of imprisonment and supervised release, the court may impose a fine of up to $250,000.00 with respect to both counts I and II, and may order restitution.

4.    The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $200.00 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.

5.    The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office") reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as information concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this

2

agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6.  The United States agrees that it will recommend at sentencing that the court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1 of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility.  The United States also agrees that, if defendant's offense level is 16 or higher, not to oppose the defendant's request that the sentencing court reduce by one additional level the offense level application to the defendant's offense, based upon the defendants's timely notifying authorities of her intention to enter a plea of guilty pursuant to Section 3E1.1(b)(2) of the Sentencing Guidelines. However, the United States will not be required to make these sentencing recommendations if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making a false statement or misrepresentation to any governmental entity or official.

7.  Although not binding on the court or the probation office the parties hereby stipulate and agree that:

3

(a)     for purposes of calculating the specific offense characteristics for the charged offense in this case under Section 2F1.1(b) of the Sentencing Guidelines, the loss is an amount more than $20,000, but less than $40,000. The government is not bound by the agreement in this paragraph if the defendant fails to disclose to the government any additional assistance she provided in fraudulently obtaining any loans other than her conduct set forth in counts I and II of the information.

(b)     for purposes of determining the defendant's role in the offense that the defendant was a minor participant as set forth in Section 3B1.2(b) of the Sentencing Guidelines.

8.   The defendant agrees that she shall cooperate fully with this Office by:

(a) providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other court proceeding; and

(b) appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings, and at meetings, as may be required by this Office.

9.   This Office reserves the right to evaluate the nature and extent of the defendant's cooperation and to make the defendant's cooperation, or lack thereof, known to the court at the time of sentencing.  If in the sole and unreviewable judgment of this Office the defendant's cooperation is of such quality and significance to the investigation or prosecution of other

4

criminal matters as to warrant the court's downward departure
from the sentence required by the Sentencing Guidelines, this
Office may at or before sentencing make a motion pursuant to
Section 5K1.1 of the Sentencing Guidelines, 18 U.S.C. §3553(e),
or a Rule 35 motion subsequent to sentencing, reflecting that
the defendant has provided substantial assistance and
recommending sentence reduction.  The defendant acknowledges and
agrees, however, that nothing in this Agreement may be construed
to require this Office to file such a motion and that this
Office's assessment of the nature, value, truthfulness,
completeness, and accuracy of the defendant's cooperation shall
be binding on the defendant.

    10.  The defendant understands and acknowledges that the
court is under no obligation to grant a government motion
pursuant to Title 18, United States Code, Section 3553(e), 5K1.1
of the Sentencing Guidelines or Rule 35 of the Federal Rules of
Criminal Procedure, as referred to in paragraph 9 of this
agreement, should the government exercise its discretion to file
such a motion.

    11.  The defendant is aware that the sentence has not yet
been determined by the court.  The defendant also is aware that
any estimate of the probable sentencing range or sentence that
the defendant may receive, whether that estimate comes from the
defendant's attorney, the government, or the probation office, is
a prediction, not a promise, and is not binding on the
government, the probation office or the court.  The defendant

5

understands further that any recommendation that the government makes to the court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the court and the court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation jointly made by both the defendant and the government.

12. The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Title 18, United States Code, Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was determined, unless (1) the sentence exceeds the maximum permitted by statute, (2) the sentence is the result of an upward departure from the guideline range the court established at sentencing, and/or (3) the court decides not to follow one or more of the sentencing recommendations made pursuant to paragraphs 6 and 7, above. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in 18 U.S.C. §3742(b). However, if the United States appeals the

6

defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights. The defendant understands that, although the defendant will be sentenced in conformity with the Sentencing Guideline, by this agreement the defendant waives the right to appeal the sentence on the basis that the sentence is the result of an incorrect application of the Sentencing Guidelines.

13. This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings.

THOMAS E. SCOTT
UNITED STATES ATTORNEY

Date: _____    By: _____
                              JEFFREY N. KAPLAN
                              ASSISTANT UNITED STATES ATTORNEY


Date: 4-10-00             By: _____
                              RUBEN GARCIA, ESQ.
                              ATTORNEY FOR DEFENDANT


Date: 4/10/00             By: _____
                              LYNDA ROSEMAN
                              DEFENDANT

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA, )    CASE NO.
                          )
              Plaintiff,  )
                          )
         v.               )    PLEA AGREEMENT
                          )
STANLEY LERNER,           )
                          )
              Defendant.  )
_____)

The United States of America and Stanley Lerner (hereinafter referred to as the "defendant") enter into the following agreement:

1.    The defendant agrees to plead guilty to the information, which charges the defendant with conspiring to commit wire fraud and mail fraud, in violation of Title 18, United States Code, Section 371. The parties agree that this plea agreement includes the defendant's involvement in mortgage fraud during the years 1995 and 1996, while the defendant was employed at Advantage Financial and Sound Mortgage.  The defendant further agrees and understands that he will be subject to another federal charge for mortgage fraud to be filed in the Southern District of Florida by the United States Attorney's Office for the years 1997 and 1998.  The government agrees to recommend to the court at the time of sentencing in both cases that the sentence in both cases be served concurrently.  The parties further agree that the minimum sentence that the defendant shall receive in both cases shall be no lower than 24 months incarceration.  The government alone retains the right to recommend to the Court that the

combined sentence be lower than 24 months.

2. The defendant is aware that the sentence will be imposed in conformity with the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"), and that the applicable guidelines will be determined by the court relying in part on the results of a Pre-Sentence Investigation by the court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the court may depart from the applicable guideline range and impose a sentence that is either more severe or less severe than the guideline range. Knowing these facts, the defendant understands and acknowledges that the court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3. The defendant also understands and acknowledges that the court may impose a statutory maximum term of imprisonment of up to five years, followed by a term of supervised release. In addition to a term of imprisonment and supervised release, the court may impose a fine of up to $250,000.00, and may order restitution.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100.00 will be imposed on the defendant. The defendant agrees that any

2

special assessment imposed shall be paid at the time of sentencing.

5.    The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office") reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as information concerning the defendant and the defendant's background.  Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6.    The United States agrees that it will recommend at sentencing that the court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1 of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility.  The United States also agrees that, if defendant's offense level is 16 or higher, not to oppose the defendant's request that the sentencing court reduce by one additional level the offense level application to the defendant's offense, based upon the defendants's timely notifying authorities of his intention to enter a plea of guilty pursuant to Section 3E1.1(b)(2) of the Sentencing Guidelines. However, the United States will not be required to make these sentencing recommendations if the defendant: (1) fails or refuses to make a

3

full, accurate and complete disclosure to the probation office of
the circumstances surrounding the relevant offense conduct; (2)
is found to have misrepresented facts to the government prior to
entering this plea agreement; or (3) commits any misconduct after
entering into this plea agreement, including but not limited to
committing a state or federal offense, violating any term of
release, or making a false statement or misrepresentation to any
governmental entity or official.

7.    The United States and the defendant agree that, although
not binding on the probation office or the court, they will
jointly recommend that the loss in this case under Section
2F1.1(b)(1)  of the Sentencing Guidelines is more than $350,000,
but not more than $500,000.

8.    The defendant agrees that he shall cooperate fully with
this Office by:

(a) providing truthful and complete information and
testimony, and producing documents, records and other evidence,
when called upon by this Office, whether in interviews, before a
grand jury, or at any trial or other court proceeding; and

(b) appearing at such grand jury proceedings, hearings,
trials, and other judicial proceedings, and at meetings, as may
be required by this Office.

9.    This Office reserves the right to evaluate the nature
and extent of the defendant's cooperation and to make the
defendant's cooperation, or lack thereof, known to the court at
the time of sentencing.   If in the sole and unreviewable judgment

4

of this Office the defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to warrant the court's downward departure from the sentence required by the Sentencing Guidelines, this Office may at or before sentencing make a motion pursuant to Section 5K1.1 of the Sentencing Guidelines, 18 U.S.C. §3553(e), or a Rule 35 motion subsequent to sentencing, reflecting that the defendant has provided substantial assistance and recommending sentence reduction. The defendant acknowledges and agrees, however, that nothing in this Agreement may be construed to require this Office to file such a motion and that this Office's assessment of the nature, value, truthfulness, completeness, and accuracy of the defendant's cooperation shall be binding on the defendant.

10. The defendant understands and acknowledges that the court is under no obligation to grant a government motion pursuant to Title 18, United States Code, Section 3553(e), 5K1.1 of the Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, as referred to in paragraph 9 of this agreement, should the government exercise its discretion to file such a motion.

11. The defendant is aware that the sentence has not yet been determined by the court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is

5

a prediction, not a promise, and is not binding on the government, the probation office or the court.  The defendant understands further that any recommendation that the government makes to the court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the court and the court may disregard the recommendation in its entirety.  The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation jointly made by both the defendant and the government.

    12.  The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case.  Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Title 18, United States Code, Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was determined, unless (1) the sentence exceeds the maximum permitted by statute, (2) the sentence is the result of an upward departure from the guideline range the court established at sentencing, and/or (3) the court decides not to follow one or more of the sentencing recommendations made pursuant to paragraphs 6 and 7, above.  The defendant further understands that nothing in this agreement shall affect the

government's right and/or duty to appeal as set forth in 18
U.S.C. §3742(b). However, if the United States appeals the
defendant's sentence pursuant to Section 3742(b), the defendant
shall be released from the above waiver of appellate rights. The
defendant understands that, although the defendant will be
sentenced in conformity with the Sentencing Guideline, by this
agreement the defendant waives the right to appeal the sentence
on the basis that the sentence is the result of an incorrect
application of the Sentencing Guidelines.

10. This is the entire agreement and understanding between
the United States and the defendant. There are no other
agreements, promises, representations, or understandings.

THOMAS E. SCOTT
UNITED STATES ATTORNEY

Date: 6/12/00          By: _____
                           JEFFREY N. KAPLAN
                           ASSISTANT UNITED STATES ATTORNEY

Date: 10/12/99         By: _____
                           HOWARD GREITZER, ESQ.
                           ATTORNEY FOR DEFENDANT

Date: 10/12/99         By: _____
                           STANLEY LERNER
                           DEFENDANT

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA  )    CASE NO.
                          )
                          )
            Plaintiff,    )
                          )
        v.                )    PLEA AGREEMENT
                          )
ELIZABETH "LIZ" VELAZQUEZ )
                          )
            Defendant.    )
_____)

    The United States of America and Elizabeth "Liz" Velazquez
(hereinafter referred to as the "defendant") enter into the
following agreement:

    1.    The defendant agrees to plead guilty to the
information, which charges the defendant with conspiring to
commit bank fraud and wire fraud, in violation of Title 18,
United States Code, Section 371.

    2.    The defendant is aware that the sentence will be
imposed in conformity with the Federal Sentencing Guidelines and
Policy Statements (hereinafter "Sentencing Guidelines"), and that
the applicable guidelines will be determined by the court relying
in part on the results of a Pre-Sentence Investigation by the
court's probation office, which investigation will commence after
the guilty plea has been entered.  The defendant is also aware
that, under certain circumstances, the court may depart from the
applicable guideline range and impose a sentence that is either
more severe or less severe than the guideline range.  Knowing
these facts, the defendant understands and acknowledges that the
court has the authority to impose any sentence within and up to

the statutory maximum authorized by law for the offense
identified in paragraph 1 and that the defendant may not withdraw
the plea solely as a result of the sentence imposed.

    3.    The defendant also understands and acknowledges that
the court may impose a statutory maximum term of imprisonment of
up to five years, followed by a term of supervised release.  In
addition to a term of imprisonment and supervised release, the
court may impose a fine of up to $250,000.00, and may order
restitution.

    4.    The defendant further understands and acknowledges
that, in addition to any sentence imposed under paragraph 3 of
this agreement, a special assessment in the amount of $100.00
will be imposed on the defendant.  The defendant agrees that any
special assessment imposed shall be paid at the time of
sentencing.

    5.    The Office of the United States Attorney for the
Southern District of Florida (hereinafter "Office") reserves the
right to inform the court and the probation office of all facts
pertinent to the sentencing process, including all relevant
information concerning the offenses committed, whether charged or
not, as well as information concerning the defendant and the
defendant's background.  Subject only to the express terms of any
agreed-upon sentencing recommendations contained in this
agreement, this Office further reserves the right to make any
recommendation as to the quality and quantity of punishment.

    6.    The United States agrees that it will recommend at

2

sentencing that the court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1 of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. The United States also agrees that, if defendant's offense level is 16 or higher, not to oppose the defendant's request that the sentencing court reduce by one additional level the offense level application to the defendant's offense, based upon the defendants's timely notifying authorities of her intention to enter a plea of guilty pursuant to Section 3E1.1(b)(2) of the Sentencing Guidelines. However, the United States will not be required to make these sentencing recommendations if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making a false statement or misrepresentation to any governmental entity or official.

7. Although not binding on the court or the probation office the parties hereby stipulate and agree that for purposes of calculating the specific offense characteristics for the charged offense in this case under Section 2F1.1(b) of the Sentencing Guidelines, the loss is an amount more than $800,000,

3

but less than $1,500,000.

8. The defendant agrees that she shall cooperate fully with this Office by:

(a) providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other court proceeding; and

(b) appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings; and at meetings, as may be required by this Office.

9. This Office reserves the right to evaluate the nature and extent of the defendant's cooperation and to make the defendant's cooperation, or lack thereof, known to the court at the time of sentencing. If in the sole and unreviewable judgment of this Office the defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to warrant the court's downward departure from the sentence required by the Sentencing Guidelines, this Office may at or before sentencing make a motion pursuant to Section 5K1.1 of the Sentencing Guidelines, 18 U.S.C. §3553(e), or a Rule 35 motion subsequent to sentencing, reflecting that the defendant has provided substantial assistance and recommending sentence reduction. The defendant acknowledges and agrees, however, that nothing in this Agreement may be construed to require this Office to file such a motion and that this Office's assessment of the nature, value, truthfulness,

4

completeness, and accuracy of the defendant's cooperation shall be binding on the defendant.

10.  The defendant understands and acknowledges that the court is under no obligation to grant a government motion pursuant to Title 18, United States Code, Section 3553(e), 5K1.1 of the Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, as referred to in paragraph 9 of this agreement, should the government exercise its discretion to file such a motion.

11.  The defendant is aware that the sentence has not yet been determined by the court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the court. The defendant understands further that any recommendation that the government makes to the court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the court and the court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation jointly made by both the defendant and the government.

5

12.  The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case.  Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Title 18, United States Code, Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was determined, unless (1) the sentence exceeds the maximum permitted by statute, (2) the sentence is the result of an upward departure from the guideline range the court established at sentencing, and/or (3) the court decides not to follow one or more of the sentencing recommendations made pursuant to paragraphs 6 and 7, above.  The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in 18 U.S.C. §3742(b).  However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights.  The defendant understands that, although the defendant will be sentenced in conformity with the Sentencing Guideline, by this agreement the defendant waives the right to appeal the sentence on the basis that the sentence is the result of an incorrect application of the Sentencing Guidelines.

6

13. This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings.

THOMAS E. SCOTT
UNITED STATES ATTORNEY

Date: 6/12/00                    By: _____
                                 JEFFREY N. KAPLAN
                                 ASSISTANT UNITED STATES ATTORNEY


Date: 5/4/2000                   By: _____
                                 DAVID SMITH, ESQ.
                                 ATTORNEY FOR DEFENDANT


Date: 5/4/2000                   By: _____
                                 ELIZABETH "LIZ" VELAZQUEZ
                                 DEFENDANT

7

AO 93 (Rev. 5/85) Search Warrant          AUSA KAPLAN\SYSACK\FBI

# United States District Court

_____ SOUTHERN _____ DISTRICT OF _____ FLORIDA _____

In the Matter of the Search of
(Name, address or brief description of property or premises to be searched)

The premises located at 2740 E. Oakland Park Boulevard, Suite 205, Fort Lauderdale, Florida, as described in Exhibit A.

## SEARCH WARRANT

CASE NUMBER:

TO: _____ Lawrence X. Sysack _____ and any Authorized Officer of the United States

Affidavit(s) having been made before me by _____ Lawrence X. Sysack _____ who has reason to
                                                                Affiant

believe that [ ] on the person of or [X] on the premises known as (name, description and/or location)

2740 E. Oakland Park Boulevard, Suite 205, Fort Lauderdale, Florida, as described in Exhibit A.

in the _____ SOUTHERN _____ District of _____ FLORIDA _____ there is now
concealed a certain person or property, namely (describe the person or property)

### SEE EXHIBIT B

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before _MARCH 3, 1995_

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime - 6:00 A.M. to 10:00 P.M.)(at any time in the day or night as I find reasonable cause has been established)) and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to _ANY U.S. MAGISTRATE JUDGE_
as required by law.                                         U.S. Magistrate Judge

Feb. 21 1995 — 11.01 a.m.      at Fort Lauderdale, Florida
Date and Time issued                              City and State

__BARRY S. SELTZER, U.S. MAGISTRATE JUDGE__
Name and Title of Judicial Officer                                 Signature of Judicial Officer

AO 93 (Rev. 5/85) Search Warrant

## EXHIBIT A

      This affidavit is submitted in support of an application to search the premises of 2740 E. Oakland Park Blvd., Suite 205, Fort Lauderdale, Florida, which is the office of John Kudron (KUDRON).  KUDRON is doing business under various names, including A-1 Affordable Homes, Inc., Royal Blue Properties, Inc., Minority Homes, Inc., and Royaline Realty South.  The office is in a three story building located in a strip type shopping center.  The front exterior of the building contains two signs, the east sign is "Quick and Reilly" and the west sign is "Brewer & Co.".  The name " ATLANTIC REAL ESTATE" appears on the door of suite 205 located on the second floor of 2740 E. Oakland Park Blvd., Ft. Lauderdale, Florida.  The purpose of the search is to find and seize the evidence, instruments,  and fruits of the fraudulent activity being conducted therein.

RT = ROUND TABLE
FC = FILING CABINET
MD = MARCIAS DESK
LD = LIZ DESK
CP = COMPUTER
CB = CHALK BOARD NEW Proper
ST = SOUTHEAST TITLE
FM = FAX MACHINE

# EXHIBIT B

The following listed items relate to a scheme to defraud by John Kudron and others from at least March 1993 through the present:

A. Contracts for the purchase/sale of real estate.

B. Buyer loan applications, verifications of employment, verifications of deposit, gift letters, bank statements, income tax records, W-2 Forms, and pay stubs.

C. Title insurance policies, title insurance commitments, real estate appraisals, and inspection reports.

D. Credit references including Bell South and FPL credit letters.

E. Financial records.

F. Records of savings and checking accounts.

G. Bank statements, canceled checks, wire transfers and deposit tickets.

H. Telephone records.

I. Personnel files.

J. Calenders, diaries, appointment books and notebooks.

K. Correspondence.

L. Cash receipts and disbursements records, reciepts, invoices and paid bills.

M. Records regarding pending or completed sales.

N. Employee payroll and compensation records.

O. Internal reports and memoranda.

P. Computer passwords, computer codes, electronic data processing storage devices, computers and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, tape drives and tape optical devices or other memory storage devices, peripheral input/output devices such as keyboards, printers, video display monitors, optical recorders, and related communication

devices such as modems, together with system documentation, operating logs and documentation, software and instruction manuals.

Q.      Computer records.

R.      Records of mailings, facsimile copies, and courier records.

S.      Overnight mail billings and receipts.

T.      Facsimile machine.

U.      Loan files.

V.      Money orders, checks, and other negotiable instruments.

W.      Cash.

X.      Customer lists, charts, chalkboard and maps.

Y.      Deposit boxes and keys or combinations thereto.

Z.      Briefcases, boxes, cartons, or other containers found on the premises that may contain any of the items of evidence described herein.

AA.     Answering machines and answering machine tape recordings.

# AFFIDAVIT OF LAWRENCE X. SYSACK
# IN SUPPORT OF SEARCH WARRANT

I, LAWRENCE X. SYSACK, being duly sworn, attest and affirm the following:

1.      I am a Special Agent of the Federal Bureau of Investigation (FBI), and am presently assigned to the FBI Miami Field Office. My responsibilities as an FBI Special Agent are to investigate violations of Federal laws. I have been a Special Agent with the FBI for 18 years and I am currently assigned to a white collar squad. I have personally conducted or assisted in conducting numerous investigations of alleged criminal violations involving false information provided to federally insured financial institutions. The information in this affidavit is based upon my personal knowledge, information from other law enforcement officers, as well as information from a reliable confidential informant.

2.      This affidavit is submitted in support of an application to search the premises of 2740 E. Oakland Park Blvd., Suite 205, Fort Lauderdale, Florida, which is the office of John Kudron (KUDRON). KUDRON is doing business under various names, including A-1 Affordable Homes, Inc., Royal Blue Properties, Inc., Minority Homes, Inc., and Royaline Realty South. The office is in a three story building located in a strip type shopping center. The front exterior of the building contains two signs, the east sign is "Quick and Reilly" and the west sign is "Brewer & Co.". The name " ATLANTIC REAL ESTATE" appears on the door of suite 205 located on the second floor of 2740 E. Oakland Park Blvd., Ft. Lauderdale, Florida. The purpose of the search is to find and seize the evidence, instruments, and fruits of the fraudulent activity being conducted therein.

3.      Based on evidence I have gathered thus far, it appears that at various times from

2

at least March 1993 through December 1996, KUDRON and Elizabeth Velazquez

(VELAZQUEZ) and others have defrauded financial institutions and mortgage companies located

throughout South Florida, including Barnett Bank, Home Savings Bank, Suntrust, First Bankers

Mortgage, National Mortgage, CFI Mortgage Company, Advantage Financial, Inc., Preferred

Funding, Transcontinental Lending, and Bennett Home Loans. Some of these loans were

guaranteed by the Department of Housing and Urban Development (HUD). In brief, the scheme

to defraud was that KUDRON would, either individually or through others, purchase residential

real estate for approximately $30,000 to $40,000 in or around Fort Lauderdale, Florida. After

completing some repairs to the residence, KUDRON would obtain a buyer for the property in the

$60,000 to $80,000 price range. However, the buyer would not be able to qualify for the loan to

buy the house. In order to ensure that the buyer was given a mortgage loan, KUDRON or

VELAZQUEZ prepared or caused to be prepared the fraudulent documents which were necessary

in order that the buyer qualify for the loan. These documents included fraudulent federal income

tax returns, W-2 statements, pay stubs, bank account statements, and Southern Bell and FPL

credit letters. KUDRON and VELAZQUEZ would also utilize false references for employment

verifications. From 1993 through 1996 KUDRON is believed to have obtained over 40 loans for

buyers of his properties through the use of false information. In addition to loans he fraudulently

obtained for buyers of his properties, he sold and financed the sale of properties through other

persons and entities, whereby the buyers utilized the same types of false information to obtain

loans from the above-described banks and mortgage companies. These entities included Granite

Properties, Equal Opportunity Homes, Chrystalyne Investments, Gold Medal Homes, Valley

Properties, and M.E.G. Investments. Overall, the investigation has revealed that KUDRON has

3

been associated with approximately 150 loans totalling in excess of $10,000,000, which have contained false information.

    4.    An example of the fraudulent documents used by KUDRON to induce the financial institutions and mortgage companies into funding loans on properties KUDRON sold are as follows:

    A.  On August 2, 1995, KUDRON doing business as Minority Homes, Inc., sold a house to Darlene Samuel for $65,000. On August 2, 1995, the loan application for the transaction was made at Barnett Bank, which was at that time a federally insured financial institution. In support of the loan, W-2 Forms for 1993 and 1994 were provided reflecting income from Tri-Star Aerospace, Inc. in excess $36,000 for each year. Furthermore, a verification of employment form allegedly completed by an official of Tri-Star Aerospance, Inc., also reflected that the borrower earned in excess of $36,000 for each year. According to tax return information obtained from the Internal Revenue Service, the borrower earned $13,223 in 1993 and $17,007 in 1994 from Tri-Star Aerospace, Inc. In addition, the loan application reflected that Darlene Samuels had a bank account at Great Western Bank with $11,867. The loan file also contained, a Great Western Bank Statement for Darlene A. Samuel, reflecting a balance of $11,867 as of August 3, 1995. According to information obtained from Dorothy Ortiz, an official of Great Western Bank, there is no record of an account in the name of Darlene Samuel or, her social security number at Great Western Bank.

    B. On August 18, 1995, KUDRON doing business as Minority Homes. Inc., sold a house to Lifaite St. Juste for $84,000 . The loan application for the transaction was made at Barnett Bank on August 18, 1995. In support of the loan application, a First Union Bank

4

statement for the borrower, reflecting a balance of $12,390.68 as of August 22, 1995, was provided to Barnett Bank. The affiant has learned from Judy Alexander and Hank Davis, both officials of First Union Bank, that the account number reflected on the bank statement is not a valid account at First Union Bank. In addition, the loan file also contains W-2 forms for 1993 and 1994 showing that the borrower worked at V DE V Auto and earned in excess of $27,000 for each year. A verification of employment form, also contained in the loan file, allegedly completed by an official of V DE V Auto reflects earnings for the borrower for 1993 and 1994 in excess of 27,000 each year. According to tax information obtained from the Internal Revenue Service, no W-2 Forms have been filed by V DE V Auto for the borrower for 1993 and 1994. In addition, Internal Revenue Service records reflect that no tax returns were filed by the borrower for 1993 and 1994.

       C. KUDRON sold a home to Belinda Scott in June 1995. The loan for the sale was made through Mortgage Dynamics, Inc., and was funded through First Security Savings Bank, FSB, which was at that time a federally insured financial institution. In addition, in April 1995, a loan application was submitted to First Bankers Mortgage to purchase a different house from KUDRON. The loan file at First Bankers contained a NationsBank statement for the borrower reflecting a balance of $5,218.92 as of April 25, 1995. The affiant has learned from Susan Clark, an official of NationsBank, that as of April 25, 1995, the borrower had an account balance of only $462.36. The First Bankers loan file also contained a verification of employment and W-2 Forms for 1993 and 1994 reflecting that the borrower worked for Mr. B's Construction and earned $21,073 and $21,762 for each year respectively. The affiant has learned from the Internal Revenue Service that Mr. B's Construction did not file a W-2 Form for the borrower.

5

Moreover, according to the Internal Revenue Service, the borrower worked for the Broward

County School Board and earned only $1,325 for 1994. Contrary to the information in the First

Bankers loan file, the loan file at Mortgage Dynamics, Inc. reflects that the borrower's bank

account is with First Union Bank not NationsBank. The document purporting to be a First Union

Bank statement for Belinda Scott reflects a balance of $9,903.70 as of June 21, 1995. The affiant

has learned from Judy Alexander and Hank Davis, both officials of First Union Bank, that the

document purporting to be a First Union Bank statement for Belinda Scott does not contain a

valid account number. Furthermore, they were unable to locate any past or present account for

Belinda Scott. Contrary to the information in the First Bankers loan file, the loan file at

Mortgage Dynamics, Inc., reflects W-2 Forms for the borrower from V.C. Electronics (not Mr.

B's Construction) showing wages of over $26,000 for each year. As previously stated, the

affiant has learned, according to the Internal Revenue Service, the borrower worked for the

Broward County School Board and earned only $1,325 for 1994.

   D. KUDRON sold a home to Shamona Watkins in November 1995. The loan for

the sale was guaranteed by HUD. The loan application reflected that Shamona Watkins had a

bank account at NationsBank containing approximately $9,000. Susan Clark, an official of

NationsBank, has informed us that the account number set forth on the loan application belongs

to another person, and that Shamona Watkins did not have an account at Nationsbank. The loan

application also states that Shamona Watkins worked at Tri-Star Aerospace and her employment

is supported by Form W-2's stating she made $35,162 and $32,142 for 1994 and 1993,

respectively. The IRS does not have any W-2 Form s reflecting employment at Tri-Star

Aerospace for Shamona Watkins. The IRS does show three Form W-2's for 1994 reflecting

6

income of approximately $2,000.

E.   In October 1996, KUDRON helped finance the sale of a house to William and

Edna Lewis through Chrystalyne Investments Inc.  The loan was guaranteed through HUD.  The

loan file contained a gift letter dated 10-14-96, claiming that Jonathan Lewis gifted $7,000 to

William Lewis to purchase the house.  William Lewis has stated that his father Jonathan Lewis

died in 1986, and never gave him $7,000.  Also contained in the loan file is a copy of a cashier's

check for $7,000 purporting to be issued to William Lewis from Jonathan Lewis which William

Lewis also claims is false.

5.     A confidential informant who has provided information which has been reliable in

the past has stated that he has worked with KUDRON and VELAZQUEZ.  He stated that

approximately six months ago KUDRON moved into Suite 205 at 2740 E. Oakland Park Blvd.

He has been to Suite 205 on many occasions.  He stated that VELAZQUEZ would prepare the

loan applications for KUDRON. If the buyer would not qualify she would prepare false

documents in order to qualify the applicant.  Form W-2's were prepared on a typewriter by

VELAZQUEZ.  Credit reference letters purporting to be sent by FP&L and Southern Bell, pay

stubs, and bank statements were prepared on a computer at KUDRON's office.  Gift letters

would be prepared by VELAZQUEZ or another person working at the office.  VELAZQUEZ

would also complete forms at KUDRON's office falsely verifying employment and verifying bank

deposits.  VELAZQUEZ would fax the verification back to the lending institution.  In the loan file

of Calvin Bennett, which we obtained from Advantage Financial, there is a verification of deposit

that is faxed from "Panasonic Fax System," for a home purchased from Chrystalyne Investments.

According to the CI, the fax is located in KUDRON's office at 2740 E. Oakland Park Blvd..

7

6. On February 7, 1997, the CI went to KUDRON's office at 2740 E. Oakland Park
Blvd., Suite 205, Fort Lauderdale, FL. The CI was wearing a recorder and transmitter. During
the course of the CI's visit, an employee of KUDRON's retrieved from the computer located in
KUDRON's office, a pay stub for Belinda Scott, showing a social security number 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,
for the pay period 6/17/95 to 6/23/95, check number 301 with YTD earnings of $11,694.19.
After retrieving the pay stub from it's storage file in the computer, the employee printed a hard
copy of the pay stub and furnished it to the CI. In addition, the employee also retrieved from the
same computer located in KUDRON's office copies of additional documents, including a
document representing to be a NationsBank statement for Marjorie Berardi, statement date
06/30/96, social security number 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, and the first three digits of an account numbered
360. The employee retrieved a Bell South credit letter for Garry Whitehead, with an account
number of 954-946-0365-701-1802. After retrieving these documents from the storage files in
the computer, the employee printed hard copies of the additional two documents and furnished
same to the CI. While inside Suite 205, the CI observed company records and other paperwork
located on desks and in file cabinets in this office space. In addition, the CI also observed the
office computer located near an employee's work area and documents displayed on the
computer's screen.

7.    NationsBank Security Officer Stuart Soffian was faxed a copy of the June 30,
1996, bank statement for Marjorie Berardi. On February 14, 1997, Soffian advised the affiant,
after review conducted by Soffian of the bank records, that there was no current or past account
belonging to Marjorie Berardi. Further, according to Soffian, the social security number 020-46-

8

5414 did not belong to any former or present account holder at Nationsbank, and that the first

three digits on the statement, ie, "360" were a designation only for business account holders, not

individual accounts. After reviewing the document purporting to be a June 30, 1996,

Nationsbank bank statement for Marjorie Berardi, Security Officer Soffian advised that the

document was a fraudulent bank account statement because it is not a format used by

Nationsbank. In addition, on February 14, 1997, Marlene Chesnal a representative of Bell South

was provided a copy of a Bell South credit letter retrieved from the computer at Suite 205 of

2740 E. Oakland Park Blvd., and handed over to the CI. Marlene Chesnal checked Bell South

records and stated that the three digit suffix to the account number for Garry Whitehead, ie "701"

was an incorrect number and that the letter was a fake. The Belinda Scott pay stub provided to

the CI, bearing social security number 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 and dated 6/23/95, reflects earnings YTD of

$11,694.19. A copy of this same pay stub is located in a loan file for Belinda Scott obtained by

the affiant from Mortgage Dynamics, Inc., which file contains numerous fraudulent documents

which are described above in paragraph 4C.


8.      Based on my conversation with the CI and my experience in bank fraud

investigations, KUDRON's office should contain desks, file cabinets, and boxes for the purpose of

organizing customer loan files, correspondence, and other documents, written or electronically

recorded, which are necessary in order to operate his fraudulent enterprise. The CI has seen these

items at KUDRON's office. It is also this affiant's experience that valuable documents and/or

money or checks are commonly kept in a locked desks, file cabinets or safes. Based on my

conversation with the CI and my training and experience, I know that the records and documents

9

listed in Exhibit B would likely be kept on the premises of KUDRON's office.

## CONCLUSION

9.      Based on your affiant's training and experience as a Special Agent of the Federal

Bureau of Investigation, and based upon the above stated facts, there is probable cause to believe

that KUDRON has defrauded numerous financial institutions, mortgage companies, and others

located throughout the United States. Your affiant further believes that some of the business

records and materials used by KUDRON in perpetrating this fraud are still located at 2740 E.

Oakland Park Blvd., Suite 205, Fort Lauderdale, Florida.

10

10.    Your affiant further believes that probable cause exists to find that violations of

Title 18, United States Code, Sections 371, 1010, 1014 and 1344, have been committed by

KUDRON and his employees and that evidence, instrumentalities and fruits relating to these

violations in the form of records and other items described herein are located at 2740 E. Oakland

Park Blvd., Suite 205, Fort Lauderdale, Florida.

AFFIANT FURTHER SAYETH NAUGHT

_____
Lawrence X. Sysack, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before

me this ____ day of February, 1997.


_____
BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE

## EXHIBIT A

           This affidavit is submitted in support of an application to search the premises of 2740 E. Oakland Park Blvd., Suite 205, Fort Lauderdale, Florida, which is the office of John Kudron (KUDRON). KUDRON is doing business under various names, including A-1 Affordable Homes, Inc., Royal Blue Properties, Inc., Minority Homes, Inc., and Royaline Realty South. The office is in a three story building located in a strip type shopping center. The front exterior of the building contains two signs, the east sign is "Quick and Reilly" and the west sign is "Brewer & Co.". The name " ATLANTIC REAL ESTATE" appears on the door of suite 205 located on the second floor of 2740 E. Oakland Park Blvd., Ft. Lauderdale, Florida.

## EXHIBIT B

The following listed items relate to a scheme to defraud by John Kudron and others from at least March 1993 through the present:

A.   Contracts for the purchase/sale of real estate.

B.   Buyer loan applications, verifications of employment, verifications of deposit, gift letters, bank statements, income tax records, W-2 Forms, and pay stubs.

C.   Title insurance policies, title insurance commitments, real estate appraisals, and inspection reports.

D.   Credit references including Bell South and FPL credit letters.

E.   Financial records.

F.   Records of savings and checking accounts.

G.   Bank statements, canceled checks, wire transfers and deposit tickets.

H.   Telephone records.

I.   Personnel files.

J.   Calenders, diaries, appointment books and notebooks.

K.   Correspondence.

L.   Cash receipts and disbursements records, reciepts, invoices and paid bills.

M.   Records regarding pending or completed sales.

N.   Employee payroll and compensation records.

O.   Internal reports and memoranda.

P.   Computer passwords, computer codes, electronic data processing storage devices, computers and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, tape drives and tape optical devices or other memory storage devices, peripheral input/output devices such as keyboards, printers, video display monitors, optical recorders, and related communication

devices such as modems, together with system documentation, operating logs and documentation, software and instruction manuals.

Q.    Computer records.

R.    Records of mailings, facsimile copies, and courier records.

S.    Overnight mail billings and receipts.

T.    Facsimile machine.

U.    Loan files.

V.    Money orders, checks, and other negotiable instruments.

W.    Cash.

X.    Customer lists, charts, chalkboard and maps.

Y.    Deposit boxes and keys or combinations thereto.

Z.    Briefcases, boxes, cartons, or other containers found on the premises that may contain any of the items of evidence described herein.

AA.    Answering machines and answering machine tape recordings.